## Case No. 1,424.

### BINNS v. WOODRUFF.

[4 Wash. C. C. 48.][1]

Circuit Court, D. Pennsylvania. April Term, 1821.

COPYRIGHT—WHO ENTITLED—PROPRIETOR—ENJOINING INFRINGEMENT.

1. Bill to enjoin the defendant from printing an engraving of an historical print, which the plaintiff claimed to have invented and designed. From the evidence and the plaintiff's bill, it appeared that neither the design nor general arrangement of the print was his invention; but that he had employed and paid the artists who had composed and executed the same. He is not entitled to a copyright.

[Cited in Pierpont v. Fowle, Case No. 11,-152; Perry v. Starrett, Id. 11,012.]

2. The person described by the act as the proprietor of the copyright, is one who shall not only invent and design, but who shall also engrave, etch or work the print, to which the right is claimed; or who from his own works and inventions, shall cause the print to be designed or engraved, etched or worked.

3. In the first case the inventor or designer is identified with the engraver, &c. or in other words, the entire work or subject of the copyright is executed by the same person. In the latter the invention is designed or embodied by the person in whom the right is vested; and the form and completion of the work is executed by another. But in neither case can a copyright be claimed by one for a mere invention existing in a form not visible to others. He must not only have invented, but he must have designed or represented the subject in some visible form.

[4. A court of equity will settle a disputed title to a copyright in a suit to enjoin the infringement of such copyright.]

[Cited in Pierpont v. Fowle, Case No. 11,-152.]

———

[1] [Reported by Hon. John McLean, Circuit Justice.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

In equity. Bill to enjoin the defendant from printing, engraving, etching, copying, publishing or selling a certain historical print of the Declaration of Independence, which the plaintiff claims to have invented and designed, at April term, 1819. [Dismissed.]

This case was before the court at April term, 1819, and was then dismissed; it having been decided, that, although in patent causes the courts of the United States have jurisdiction when both parties reside in the same state, the same did not exist in cases of copyright. On the 15th of February, 1819, [3 Stat. 481, c. 19,] congress passed a declaratory law, giving original cognizance to the courts of the United States, as well in equity as at law, of all actions, &c., arising under any law of the United States, granting or confirming to authors or inventors the exclusive right to their respective writings, inventions and discoveries; and upon any bill in equity, filed by any party aggrieved in any such cases, giving authority to grant injunctions according to, the course and principles of courts of equity, &c.

C. J. Ingersoll, for the plaintiff, contended that the objection to the jurisdiction of the court being removed by the act of congress, the facts proved in this case establish the plaintiff's exclusive right to the historical print mentioned in the bill, and entitle him to the injunction which is prayed for. See act of 29th April, 1802, c. 296, [3 Bior. & D. Laws, 493; 2 Stat. 171.]

Binney, for the defendant, insisted that the facts proved show that the plaintiff neither invented and designed, engraved, etched or worked, or from his own works and inventions, caused to be designed or engraved, the historical print in question. That according to the true construction of the act of congress, which is, with some slight variations, copied from the statute 8 Geo. II. c. 13, the person claiming the right must design, or in other words delineate, the subject of his invention. It is not sufficient for him to employ artists to delineate, to paint, or to engrave the conceptions of his mind. Blackwell v. Harper, 2 Atk. 92; Jefferys v. Baldwin, 1 Amb. 164. In this case the plaintiff invented and designed nothing. The whole were the works of other persons. The plaintiff has no right, upon another ground, which is, that he has not filed a copy of the engraving in the office of the secretary of state, as he is required to do by the act.

In answer to the second objection it was answered by Ingersoll, that the filing a copy in the office of the secretary of state is merely directory. 2 Atk. 94, 95; Beckford v. Hood, 7 Term. R. 620; 1 Camp. 94; 1 Gall. 433, [Whittemore v. Cutter, Case No. 17,600;] 3 Day, 145. Upon the first point,

he cited 9 Johns. 537, which mentions the case of Morse v. Reed, [Case No. 9,860,] decided by Judge Ellsworth.

WASHINGTON, Circuit Justice. This is a bill filed on the equity side of the court, praying an injunction to restrain the defendant from printing, engraving, etching, copying, publishing, or selling a certain historical print of the Declaration of Independence, which the plaintiff claims to have invented and designed. The act of the 31st of May, 1790, c. 15, [1 Stat. 124, § 1,] secures to the authors of maps, charts and books, an exclusive right to the same, for a certain number of years. The supplementary act of the 29th of April, 1802, c. 36, § 2, [2 Stat. 171,] grants a similar right in respect to historical prints, engraved, etched or worked.

The bill in this case states, that the plaintiff, in the month of March, 1816, invented and designed, or caused to be begun to be designed, engraved, and worked, an historical print, and splendid edition of the Declaration of Independence, and in the same year publicly announced his intention of publishing the same, by advertisement in six daily newspapers in Philadelphia, and in many other papers throughout the United States, setting forth "that the design, which is from the pencil of Mr. Bridport, will be executed in imitation of bas relief, and will encircle the declaration as a cordon of honour surmounted by the arms of the United States; immediately under which will be a large medallion of General Washington, supported by a cornucopia, and embellished with flags, spears, and other military trophies. On one side of this medallion, will be a similar portrait of John Hancock, president of congress, 4th of July, 1776, and on the other, a portrait of Thomas Jefferson, author of the declaration. The arms of the thirteen united states, in medallions united by wreaths of olive leaves, will form the remainder of the cordon, which will be further enriched by some of the characteristic productions of the United States, such as the tobacco and indigo plants, the cotton shrub, rice, &c. The fac similes will be engraved by Mr. Valance, who, by permission of the secretary of state, will have the original signatures constantly before him. The portraits will be engraved from original paintings, and the most esteemed likenesses. The arms of the United States and of the several states, will be faithfully executed from official descriptions, and in the manner directed by the most approved authors in the science of heraldry." The bill further states, that the outline of the design was done by Mr. Bird in 1816, when the plate and design were put into the hands of Mr. Murray, the engraver. The documents, containing the official copies and descriptions of the arms of the several

states, were obtained from the respective governors, and were then placed in the hands of Mr. Sully to be painted. That the sums paid to the several artists so employed, and for other expenses attending the execution of this work amounted to about $4,000. The bill, after alleging that the plaintiff has deposited a printed copy of the said print in the clerk's office of the district court of the eastern district of Pennsylvania, and published the requisite legal notice thereof in newspapers, and that as soon as the said work is published, he will cause to be impressed on the face of the said print, the words which by law are directed to be impressed, so as to complete the plaintiff's legal title. therein; proceeds to charge the defendant with having engraved, published, and exposed for sale, an historical print of the Declaration of Independence, of a plan, design and engraving, exactly similar to, and copied from that of the plaintiff, by varying from, adding to, and diminishing the main design.

The answer denies that the plaintiff invented, designed, engraved, &c. or that from his own works and inventions, he caused to be designed, &c. the historical print mentioned in the bill. That on the contrary, the said print was invented and designed, engraved, &c. by other persons, and not by the plaintiff. It further denies that the plate which the defendant has prepared for publication, is of the plan, design, or engraving, similar to that of the plaintiff, except so far forth as that the defendant has engraved the Declaration of Independence with an oval composed of the arms of the different states, but surmounted with the heads of the first three presidents of the United States, and not that of Mr. Hancock. That the defendant has not procured fac similes of the several signatures to that instrument, nor has he connected the arms of the states by wreaths of olive leaves, or followed, used, or imitated in any manner the devices, engravings, or etchings of the print mentioned in the bill.

The deposition of Murray states, that early in the year 1816, the plaintiff applied to him to engrave the state arms, and other ornamental parts of a plate which he intended to publish of the Declaration of Independence, which the witness undertook to do. Soon after the plaintiff handed to him a design by Mr. Bridport, which embraced the general arrangement of his intended publication. The drawings of the state arms were also delivered to him at different times, executed by Mr. Sully, and so reduced as to suit the spaces allotted to them in Bridport's design. The witness supposes that the drawing of General Washington's head was taken from Stuart's painting. The arms were engraved from drawings by Sully. Bridport designed the drawings for the ornaments connecting the arms, as well as the cotton, rice and tobacco plants at the bottom, and the devices at the top. The witness expresses his opinion that the whole arrangement, and not the particular parts of the print, constitutes the design, and that in this respect, the defendant's print is a copy of the plaintiff's. That the particular parts of the defendant's print are not correctly copied from the other. The plaintiff paid the artists, who were not concerned with him in interest, and he consulted them about the arrangement, previous to its being done.

The first question which arises upon the facts in this cause is, whether the plaintiff is such an inventor of the print of which he claims to be the proprietor, as the act of congress intended and described? The act of the 29th of April, 1802, enacts that after a certain day, "any person being a citizen of the United States, or a resident within the same, who shall invent and design, engrave, etch or work, or from his own works and inventions shall cause to be designed and engraved, etched, or worked any historical or other print, shall have the sole right and liberty of printing, re-printing, publishing and vending such print, for the term of fourteen years from the recording the title thereof in the clerk's office, as prescribed by the act of the 31st of May, 1790, in relation to maps, &c., provided he shall perform all the requisites in relation to such print, as are directed in relation to maps, in the third and fourth sections of the said act."

The person then who is intended and described as the proprietor of a copyright, is one who shall not only invent and design, but who shall also engrave, etch, or work the print to which the right is claimed; or who, from his own works and inventions, shall cause the print to be designed and engraved, etched or worked. In the first case, the inventor and designer is identified with the engraver, &c.; or in other words, the entire work, or subject of the copyright is executed by the same person. In the latter, the invention is designed or embodied by the person in whom the right is vested, and the form and completion of the work are executed by another. But in neither case, as we apprehend, can a person claim a copyright for a mere invention, the work of his imagination locked up in his own mind, or existing in a form not visible to others. Neither is he so entitled, unless he has not only invented, but also designed or represented the subject in some visible form. Thus, a man may imagine the order, and all the circumstances of a naval action, and by a painting or engraving executed by himself, may represent the subject of his invention to the view of others. Or he may be able to represent the subject by a drawing, and yet not be able to make an engraving of it, being himself unacquainted with that art. In this latter case, the act provides, that he may cause it to be engraved by an artist, so as to entitle himself to a copyright to the engraving, although not his own work; but then the engraving was executed from his own

work and invention. Thus in Blackwell v. Harper, 2 Atk. 93, the plaintiff not only conceived the idea of making a representation of the medicinal plants, but she also engraved them herself, and the combination of the two afforded the evidence of genius and art which the law intended to encourage. But in the case of Jefferys v. Baldwin, 1 Amb. 164, decided also by Lord Hardwicke, the plaintiff, though he conceived the idea of representing the busses of the society of the British herring fishery, was not considered an object of this encouragement, because the drawings were not executed by himself, but by a person employed by him for that purpose. He neither invented and designed, nor did he cause the representation to be designed or engraved from his own work and inventions. He conceived the idea, but he did nothing himself which indicated genius and art.

If we have correctly construed the act of congress, the next inquiry is, how does it apply to this case? The bill states that the "design" (which phrase, when used as a term of art, clearly means the giving of a visible form to the conceptions of the mind, or, in other words, to the invention) was from the pencil of Bridport; and it then proceeds to describe more particularly all the parts of that design. This allegation is confirmed by Murray, who states, that the design which he was employed to engrave, was the work of Bridport, and that it embraced the general arrangement of the plaintiff's publication; and the same witness, speaking as an artist, says, that the arrangement, which was drawn by Bridport, constituted the design. The design or arrangement is then described in the bill as consisting of the Declaration of Independence, encircled as by a cordon of honour, surmounted by the arms of the United States underneath medallions of three distinguished personages, one of them supported by a cornucopia, and embellished with flags, &c., medallions containing the arms of the several states, united by wreaths of olive leaves, and the whole enriched by certain characteristic productions of the United States. Whether the fac similes formed a part of Bridport's design, does not distinctly appear in any part of the proceedings or evidence. But it is nowhere asserted to be the invention of the plaintiff, and as constituting a part of the general design; and the bill alleges that they were engraved by Valance from the original signatures in the office of the secretary of state. The bill further alleges that the portraits were to be engraved from original paintings; that the arms of the United States, and of the several states, were painted by Mr. Sully, from original descriptions obtained from the governors of states. Murray deposes that Bridport designed the drawings for the ornaments connecting the arms, as well as the characteristic productions of the United States, and the devices at the top of the print.

It is then quite obvious, that neither the design, nor general arrangement of that print, nor the parts which composed it, were the invention of the plaintiff. The former, which constitutes the combination, or arrangement of the parts, owed its conception and delineation to Mr. Bridport, as did also the ornaments, and many other of the parts. The portraits, arms of the United States, and of the several states, were, long before the year 1816, printed or drawn, and were copied by the artists employed by the plaintiff, as were also the original signatures to the declaration. It follows, therefore, that the plaintiff did not design and invent, nor did he, from his own work and inventions, cause this print to be designed and engraved. He is therefore not entitled to a copyright under the provisions of the act of congress.

The opinion upon this point renders it unnecessary to compare the defendant's print with that claimed by the plaintiff, for the purpose of deciding whether the former is such a copy of the latter as was intended by the act. Neither is it necessary to give any opinion upon another question which was much discussed at the bar—that is, whether, to the perfection of the copyright of an inventor, it is necessary that he should lodge a copy of the print in the office of the secretary of state? It may not, however, be amiss to observe that the objection does not arise in this case, since the act gives to the party six months after the publishing of the print, &c., to make the deposit; and it appears by the bill, which is not contradicted by the answer, that, at the time the bill was filed, the print in question was not even prepared for publication.

The case coming on for a hearing, I shall dismiss the bill with costs.